NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830
*Attorneys for Plaintiff*
*Ascot Insurance Company, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

ASCOT INSURANCE COMPANY, INC.                    No.:

                          Plaintiff,

       - against -                               **DECLARATORY**
                                                 **JUDGMENT COMPLAINT**
PURE AVIATION, LLC.

                          Defendants.

--------------------------------------------------------------X

       Plaintiff ASCOT INSURANCE COMPANY, INC. ("Plaintiff" or "Ascot"), by and

through its attorneys, Nicoletti Hornig & Sweeney, as and for a Complaint against Defendant

PURE AVIATION, LLC ("Defendant" or "Pure Aviation"), respectfully alleges upon

information and belief as follows:

## JURISDICTION

       1.     This action is filed under and pursuant to the Federal Declaratory Judgment Act,

28 U.S.C. § 2201.

       2.     The following issues constitute questions of insurance coverage under an

Admiralty or Maritime contract of insurance and thereby come within the Admiralty and

Maritime jurisdiction of the United States District Court pursuant to Title 28 U.S.C. § 1333

*et seq.*, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

3.     An actual controversy of a justiciable nature exists between Plaintiff and Defendant involving the rights and obligations under a marine contract of insurance and, depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court without further suit.

4.     The Court also has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a)(2) as there is complete diversity of citizenship by and between Plaintiff Ascot and Defendant Pure Aviation. Pure Aviation is a citizen of Texas because its member, Carlo DiMarco, is domiciled in Texas. DiMarco maintains his domicile at 5005 Duval Street, Austin, Texas 78751, and maintains his principal place of business in Texas.

5.     The amount in controversy between Plaintiff Ascot and Defendant Pure Aviation exceeds the sum of $75,000, in that in the event that liability is found in this action to exist under the Policy, Plaintiff Ascot may be required to pay in excess of that amount, exclusive of interest and costs.

**PARTIES**

6.     At all times relevant, Plaintiff Ascot was and is a corporation duly organized and existing under and by virtue of the laws of the State of Colorado, with a principal place of business located at 55 West 46th Street, New York, New York 10036.

7.     At all times relevant, Plaintiff Ascot was in the business of issuing insurance contracts or policies, including, but not limited to, marine cargo insurance and/or transit insurance contracts or policies.

8.     At all times relevant, defendant Pure Aviation was and is a limited liability company duly organized and existing under and by virtue of the laws of the State of Montana,

2

with an office address at 55 W. 14ᵗʰ Street, Suite 101, Helena, Montana 59601, and a principal place of business located at 4801 Emma Browning Avenue, Austin, Texas 78719.

9.      At all times relevant, defendant Pure Aviation was and is an energy and petrochemicals trading and supply firm.

10.      At all times relevant, defendant Pure Aviation did and does conduct business in the State of New York.

## THE POLICY

11.      On or before August 4, 2021, non-party insurance broker U.S. Risk, LLC ("U.S. Risk"), on behalf of defendant Pure Aviation, solicited from and negotiated with plaintiff Ascot for a contract of marine cargo insurance to insure certain cargo in transit as set forth in the policy.

12.      On or about August 13, 2021, U.S. Risk, on behalf of defendant Pure Aviation, negotiated with certain underwriters in Plaintiff Ascot's New York office for a marine cargo insurance contract to be issued to defendant Pure Aviation.

13.      On or about August 22, 2021, Plaintiff Ascot, through its underwriters in New York, bound a particular marine cargo policy in New York for the account of defendant Pure Aviation.

14.      A copy of the Ascot Marine Cargo Insurance Policy No. MACA2110002455-01 is annexed hereto and made a part hereof as Exhibit "1" (hereinafter referred to as the "Policy").

15.      The Policy issued by Plaintiff Ascot to Defendant Pure Aviation is governed and controlled by Federal Maritime law.

16.      The Policy has a policy period of August 20, 2021 to August 20, 2022.

17.     The available coverage under the Policy, subject to the full terms and conditions thereof, was and is to cover "all risks of physical loss of or damage to the goods insured except as provided in Section 4 below or elsewhere in this Policy."

18.     The Policy's Declaration Page provides the following, in pertinent part

**Type:**                    Transit Insurance

* * *

**Goods Insured:**     Petroleum products

**Geographical Limits:** Worldwide

**Basis of Valuation:**   Market Value on day of commencement of transit

* * *

**Limit(s) of Liability:**
Transit:                $125,000      each and every loss, any one railcar
                        $5,000,000    each and every loss, any one Conveyance
Additional:             $25,000        in respect of extra expenses any one loss
                        and in the annual aggregate
**Deductible(s):**
 Transit:               $0  of total value of conveyance, each and every loss or
                        occurrence
Additional:             0.5%  of total value of conveyance, each and every loss
                        subject to a minimum of $100,000 in respect of losses
                        occurring in Mexico

* * *

**Conditions (Applicable to all sections)**

* * *

**Warranties:**   Coverage ceases upon passing railcar flange in Mexico
                  Excluding absolutely all losses resulting contamination

* * *

19.     The Policy provides the following, in pertinent part:

3. GOODS INSURED

All goods, merchandise and/or cargo described in the "Declarations Page" or consistent with that description, handled by the Insured during the course of their business or while in their care, custody or control. Excluding, however, all fixtures and fittings, machinery, equipment and business personal property of the Insured.

* * *

6. DEFINITIONS
i. "**Occurrence**" shall mean an accident, including a series or sequence of accidents or continuous and repeated exposure to substantially the same general harmful conditions, arising from the same causal event for which coverage under this Policy applies, none of which was expected or intended. Natural catastrophe occurrences are defined further below.

* * *

8. LIMITS OF LIABILITY
The Insurer shall not be liable under this Policy for more than the limits stated as per "Declarations Page"....

* * *

13. BASIS OF VALUATION
As per "Declarations Page."

* * *

15. RISKS COVERED
This Policy covers all risks of physical loss of or damage to the goods insured except as provided in Section 4 below or elsewhere in this Policy.

* * *

39. GENERAL EXCLUSIONS
In no case shall this Policy cover:
...
v. loss, damage or expense caused by delay, even if the delay is caused by a risk insured against (except expenses payable under General Average Clause 18 above);

* * *

49. DURATION OF COVERAGE CLAUSE
i. Subject to Clause 56 below, this Policy attaches from the time the goods insured are first moved in the warehouse or at the place of storage (at the place named in the contract of insurance) for the purpose of the

5

immediate loading into or onto the carrying vehicle or other conveyance for the commencement of transit, continues during the ordinary course of transit and terminates either

1. on completion of unloading from the carrying vehicle or other conveyance in or at the final warehouse or place of storage at the destination named in the contract of insurance,

or

2. on completion of unloading from the carrying vehicle or other conveyance in or at any other warehouse or place of storage, whether prior to or at the destination

named in the contract of insurance, which the Insured or their employees elect to use either for storage other than in the ordinary course of transit or for allocation or distribution,

or

3. when the Insured or their employees elect to use any carrying vehicle or other conveyance or any container for storage other than in the ordinary course of transit

or

4. on the expiry of 60 days after completion of discharge overside of the goods insured from the oversea vessel at the final port of discharge, whichever shall first occur.

* * *

57. DUTY OF INSURED

It is the duty of the Insured and their employees and agents in respect of a covered loss to goods insured hereunder:

i. to take all measures to avert and/or minimize such loss; and

ii. to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised.

The Insurer will, in addition to any loss recoverable hereunder, reimburse the Insured for any charges properly and reasonably incurred in pursuance of these duties.

* * *

69. OTHER INSURANCE CLAUSE

i. In the case that the goods insured are covered by other insurance (except as hereinafter provided), the loss shall be collected from all applicable policies in the order of the date of their attachment. Any policies attaching on the same date are to be deemed simultaneous and are to contribute pro rata. This is provided, however, that where any fire insurance, or any insurance (including fire) that is taken out by any carrier or bailee (other than the Insured), such insurance is available to the Insured, or would be so available if this Policy did not exist, and this Policy shall be void to the extent that such other insurance is or would have been available.

6

ii. It is agreed, that where the Insurer is relieved of liability because of the existence of other insurance, the Insurer shall receive and retain the Premium payable under this Policy. In consideration thereof, the Insurer shall guarantee the solvency of the companies and/or insurers who issue such other insurance to the same extent (only) as the Insurer shall have been relieved of liability under the terms of this clause, but not ever to exceed the amount which would have been collectible under this Policy if such other insurance did not exist.

\* \* \*

## VENUE

20.      In and by the terms of the Policy, Plaintiff Ascot and Defendant Pure Aviation

agreed that any lawsuit with respect to disputes concerning or arising from the Policy may be

brought in the Southern District of New York, as follows:

> 72. LAW AND PRACTICE
> This Policy is deemed to have been issued to the Insured in New York, New York, and the law applicable to the interpretation of this Policy and the rights and obligations of the Insurer, including as to any claim for extra-contractual damages, bad faith, attorneys' fees and all like claims, and the Insured hereunder shall be U.S. federal maritime law, or in the absence of controlling U.S. federal maritime law, the law of the State of New York, without regard to federal or New York's choice of law or conflicts of law rules or principles.
>
> Should there be any dispute arising out of or in any way concerning this Policy or the coverage provided by the Insurer to the Insured hereunder, which results in any lawsuit or other legal action against the Insurer by the Insured, the Insured shall bring such lawsuit or legal action exclusively in the United States District Court for the Southern District of New York, and the Insurer consents to the jurisdiction of that Court for all such lawsuits or legal actions. Any lawsuit or legal action brought by the Insurer against any Insured with respect to disputes concerning or arising from this Policy, whether on account of premium owed or otherwise, may be brought by the Company in the United States District for the Southern District of New York.
>
> In the absence of federal subject matter jurisdiction, the Insurer and the Insured agree that any lawsuit as set forth in this Law and Practice Clause, shall be brought in the Supreme Court of the State of New York, County of New York.

7

## FACTS

21.     On or about January 12, 2022, through its broker U.S. Risk, Defendant Pure Aviation notified Plaintiff Ascot that certain cargo consisting of heating oil had been contaminated during a tank-to-tank transfer at the Kinder Morgan ("KM") terminal in Pasadena, Texas.

22.     Defendant Pure Aviation claimed that the subject cargo of heating oil was contaminated with gasoline components while at the KM terminal on or about November 1, 2021.

23.     Correspondence between KM and Pure Aviation indicates that the heating oil was being stored in a tank at KM and then contaminated during the transfer to another KM tank, prior to loading onto the Pure Aviation barge.

24.     Defendant Pure Aviation submitted the following undated correspondence to Plaintiff Ascot setting forth an outline of its insurance claim:

> Pure Aviation's initial movement at Kindermorgan Pasadena was a tank to tank transfer 150-44 to our 150-30. After nomination there were extreme delays in operations due to pump maintenance and weather conditions which caused demurrage and losses across all aspects of our operations. Upon completion, delays continued into our barge nominations causing the barge to sit for days which turned to weeks waiting on Kinder Morgan to allow us to load. When we finally began to load, the shore lines were testing outside of our parameters so KM started to try and clean up the lines pumping tens of thousands of gallons of our product into slop tanks in the process. Eventually Kinder Morgan brought in a portable pump and temporary dedicated lines to try and bypass the areas they thought were contaminated, this however did not work and the line continued to show negative results at the point closest to our barge. After days of going back and forth Kinder Morgan made an executive decision to load our barge without approval and ultimately contaminated and downgraded the remainder of our cargo. We in turn were unsuccessful in taking the damaged cargo to our clients. One of the primary reasons these products were purchased was for specific characteristics, however, one of the main contaminants that we observed at KM was a significant amount of introduced gasoline components from somewhere on the Pasadena property at Kinder Morgan. Due to the operational issues listed above we encountered significant delays and product loss that is the basis of our claim set forth in this drive. There are 3 principal aspects of the claim: 1. Product Damaged within the terminal of Kinder Morgan. 2. The associated consequential damage of the loss and delays of the product 3. The significant reduction is sales price of the

reclaimed damaged product "disposal costs"

25.     As per Defendant Pure Aviation's submitted claim outline, the initial petroleum product cargo movement at Kinder Morgan ("KM") Pasadena was a tank-to-tank transfer from Tank 150-44 to Tank 150-30.

26.     Defendant Pure Aviation further reported that KM experienced extreme delays in operations due to pump maintenance and weather conditions. In turn, this allegedly caused demurrage and losses across Pure Aviation's operations.

27.     Defendant Pure Aviation advised that the delays allegedly continued into its barge nominations, causing the barge to sit for weeks while Pure Aviation waited on KM to allow it to load its cargo.

28.     When Defendant Pure Aviation finally began to load its cargo, the shore lines allegedly tested outside of its parameters, so KM started to attempt to clean up the lines. Defendant Pure Aviation claimed that KM personnel pumped tens of thousands of gallons of Pure Aviation's product into slop tanks in the process.

29.     Defendant Pure Aviation reported that KM eventually brought in a portable pump and temporary dedicated lines to attempt to bypass the areas they thought were contaminated, which was apparently unsuccessful, as the new lines continued to test outside Pure Aviation's parameters.  Thereafter, KM unilaterally loaded Defendant Pure Aviation's barge with allegedly contaminated and downgraded cargo.

30.     Defendant Pure Aviation has reported that due to the cargo contamination, it was unable to deliver the cargo to its clients. Pure Aviation reported that the primary cargo contaminant was gasoline components introduced from somewhere on the KM Pasadena property.

31.     Defendant Pure Aviation advised that it had purchased the cargo (15,000 barrels of heating oil) for $1,274,715.00 USD and that as a result of the contamination of the cargo during the tank-to-tank transfer at the KM terminal, the insured was forced to dispose of the "off spec" cargo at a substantial loss.

32.     Pure Aviation has submitted claims under the Policy for the following: (1) cargo damaged within the KM terminal, (2) the "associated consequential damages of the loss and delays of the product", and (3) the "significant reduction in sales price of the reclaimed damaged product disposal costs."

33.     Despite repeated requests, Plaintiff Pure Aviation has failed to provide Plaintiff Ascot with shipping documents or any other information concerning the destination of the shipment of heating oil being collected at the KM terminal.

34.     Despite repeated requests, Defendant Pure Aviation has provided no information to Plaintiff Ascot concerning any efforts to remediate the allegedly contaminated cargo or mitigate its claimed damages in any way.

35.     By correspondence dated March 31, 2022, Plaintiff Ascot declined coverage for Pure Aviation's claim arising out of the alleged contamination of the subject petroleum product. A copy of the March 31, 2022 correspondence is annexed hereto as Exhibit "2".

36.     By this action, plaintiff Ascot declines Defendant's claim under the Policy arising out of the alleged contamination of the subject heating oil, based on the presently known facts and applicable law for the reasons stated herein.

## AS AND FOR A FIRST CAUSE OF ACTION
### (The Contamination Warranty)

37.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "36" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

38.    The Policy's Declarations Page contains an express warranty which provides as follows: "Warranties:…Excluding absolutely all losses resulting contamination."

39.    Defendant Pure Aviation's claimed losses were allegedly caused by the contamination of the heating oil with gasoline products or other contaminants that negatively affected its purity.

40.    Consequently, there is no coverage under the Policy for the claimed loss due to the contamination of the subject heating oil.

41.    By virtue of the foregoing premises, Plaintiff Ascot has no liability under the Policy or otherwise for the alleged contamination of the subject heating oil and any associated liabilities arising out of the alleged contamination.

## AS AND FOR A SECOND CAUSE OF ACTION
### (The Duration of Coverage Clause)

42.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "41", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

43.    The Policy's Duration of Coverage Clause provides that coverage attaches from the time the insured goods are "first moved in the warehouse or at the place of storage (at the place named in the contract of insurance) for the purpose of the immediate loading into or onto the carrying vehicle or other conveyance for the commencement of transit, …."

11

44.     To the extent any claimed loss occurred either prior to the commencement of transit or after transit had concluded pursuant to the above Duration of Coverage clause, there is no coverage under the Policy.

45.     Accordingly, there is no coverage under the Policy for the claimed loss because the subject cargo was not "in transit" at the time of the contamination and therefore coverage never attached pursuant to the Policy's Duration of Coverage clause.

46.     By virtue of the foregoing premises, Plaintiff Ascot has no liability under the Policy or otherwise for the alleged contamination of the subject heating oil and any associated liabilities arising out of the alleged contamination.

## AS AND FOR A THIRD CAUSE OF ACTION
### (The Delay Exclusion)

47.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "46" inclusive of this Complaint with the same force and effect as if more fully set forth herein.

48.     Pure Aviation has submitted a claim for "the associated consequential damages of the loss and delays of the product."

49.     The Policy contains the following relevant provision:

> 39. GENERAL EXCLUSIONS
> In no case shall this Policy cover:
> …
> v. loss, damage or expense caused by delay, even if the delay is caused
> by a risk insured against (except expenses payable under General
> Average Clause 18 above)

50.     The foregoing delay exclusion expressly excludes coverage for losses caused by delay, even if the delay was caused by a risk insured against.  Therefore, any losses proximately caused by delay are not covered under the subject Policy.

51.     Any claimed losses that were proximately caused by delay are not related to physical loss or damage as required for coverage under the Policy.

52.     Consequently, to the extent Defendant Pure Aviation is claiming that the operational delays at the KM terminal caused it to lose profits and/or sell the cargo at a lower price due to the oil shipment's delayed arrival, such claims would be excluded by the delay exclusion.

53.     By virtue of the foregoing premises, Plaintiff Ascot is not liable under the Policy with respect to Defendant Pure Aviation's claims for loss, damage or expense caused by delay.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Pure Economic Loss Not Covered)

54.     Repeats and realleges each and every allegation set forth in paragraphs "1" through "53", inclusive of this Complaint with the same force and effect as if more fully set forth herein.

55.     There is no coverage for pure economic loss as the Policy only provides coverage for physical loss or damage.

56.     The "Risks Covered" provision provides that the Policy covers "all risks of physical loss or damage to the goods insured except as provided in Section 4 below or elsewhere in this Policy."

57.     There are no provisions in the Policy that change the requirement that the claimed loss must result from direct physical loss or damage to the insured property in order for there to be coverage.

58.     Consequently, any pure economic loss suffered by Pure Aviation that was not the result of physical loss or damage to insured property is not covered under the Policy.

59.     By virtue of the foregoing premises, Plaintiff Ascot is not liable under the Policy

with respect to defendant Pure Aviation's claim alleging pure economic loss.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Insured's Duty to Mitigate)

60.     Repeats and realleges each and every allegation set forth in paragraphs "1"

through "59", inclusive of this Complaint with the same force and effect as if more fully set forth

herein.

61.     The Policy contains the following relevant provision:

> 57. DUTY OF INSURED
> It is the duty of the Insured and their employees and agents in respect of a
> covered loss to goods insured hereunder:
> i. to take all measures to avert and/or minimize such loss; and
> ii. to ensure that all rights against carriers, bailees or other third parties
> are properly preserved and exercised.
> The Insurer will, in addition to any loss recoverable hereunder, reimburse
> the Insured for any charges properly and reasonably incurred in pursuance
> of these duties.

62.     Defendant Pure Aviation has failed to take all measures to avert and/or minimize

its claimed loss as required under the Policy.

63.     By virtue of the foregoing premises, plaintiff Ascot has no liability under the

Policy or otherwise for the alleged contamination of the subject heating oil and any associated

liabilities arising out of the alleged contamination.

WHEREFORE, plaintiff Ascot Insurance Company, Inc. prays for judgment against

defendant Pure Aviation LLC as follows:

A.     In favor of plaintiff against defendant on the First Cause of Action

        declaring that there is no coverage under the Policy for the alleged

contamination of the subject cargo and any associated liabilities arising out of the alleged contamination;

B. In favor of plaintiff against defendant on the Second Cause of Action declaring that there is no coverage under the Policy for the alleged contamination of the subject cargo and any associated liabilities arising out of the alleged contamination;

C. In favor of plaintiff and against defendant on the Third Cause of Action for judgment declaring that there is no coverage under the Policy with respect to any claim for loss, damage or expense caused by delay;

D. In favor of plaintiff and against defendant on the Fourth Cause of Action for judgment declaring that there is no coverage under the Policy with respect to defendant's claim alleging pure economic loss;

E. In favor of plaintiff and against defendants on the Fifth Cause of Action for judgment declaring that there is no coverage under the Policy for the alleged contamination of the subject cargo and any associated liabilities arising out of the alleged contamination; and

F. For such other and further relief that this Court may deem just and proper; together with the costs and disbursements of this action.

Dated:    New York, New York
           December 11, 2023

                                NICOLETTI HORNIG & SWEENEY
                                *Attorneys for Plaintiff*
                                *Ascot Insurance Company, Inc.*

                                */s/ Val Wamser*

           By:                           _____

                                Val Wamser (VW-0511)
                                Wall Street Plaza
                                88 Pine Street, 7th Floor
                                New York, New York 10005-1801
                                (212) 220-3830
                                (FILE NO.:  00001522 VW)